UNITED STATES SURGICAL
CORP., Plaintiff,

v.

ORRIS, INC., et al., Defendant.

Civil Action No. 96–2300–GTV.

United States District Court,
D. Kansas.

April 29, 1998.

Opinion Amending Judgment June 19, 1998.

Joel K. Goldman, John K. Power, Bruce A. Moothart, Michael L. Matula, Husch & Eppenberger, Kansas City, MO, John C. Andres, Basam E. Nabulsi, Carolyn H. Blankenship, Norwalk, CT, Terry R. Woodard, Central Islip, NY, for U.S. Surgical Corp.

Michael B. Hurd, Joseph G. Matye, Scott B. Strohm, James R. Eiszner, Shook, Hardy & Bacon L.L.P., Kansas City, MO, Patrick Lysaught, Polsinelli, White, Vardeman & Shalton, Kansas City, MO, Raymond G. Hofker, Houston, TX, for Orris, Inc., Brett Hoskins, Paul Lovoi, Advantage Medical Products, Nancy English and Crystal Medical Technologies, Inc.

## MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

Plaintiff United States Surgical Corporation (U.S.Surgical) brings this action claiming that Orris, Inc.'s (Orris)[1] process of cleaning, resterilizing, and resharpening medical instruments constitutes trademark infringement under 15 U.S.C. § 1114, unfair competition under 15 U.S.C. § 1125(a), patent infringement under 35 U.S.C. § 271, common law unfair competition, and tortious interference with contract and business expectancy. The case is before the court on Orris' motion (Doc. 174) for summary judgment and U.S. Surgical's motion (Doc. 168) for partial summary judgment. For the reasons set forth below, Orris' motion for summary judgment is granted and U.S. Surgical's motion for partial summary judgment is denied as moot.

### I. FACTUAL BACKGROUND

The following facts are either uncontroverted or are based on evidence submitted in summary judgment papers viewed in a light most favorable to the nonmoving party. Immaterial facts and facts not properly supported by the record are omitted.

U.S. Surgical manufactures medical surgical instruments and markets the instruments to hospitals. U.S. Surgical registered trademarks on its own name and its products' names and registered patents on its products. The corporation has expended substantial time, effort, and money to develop and promote customer recognition of its trademarks and exercises stringent quality control methods to assure that its customers receive a superior quality product.

U.S. Surgical enters into contracts with its customers for the sale of its disposable instruments. It also enters into contracts with distributors who in turn sell its disposable instruments. The customers submit individual orders by telephone, fax, mail, or electronic data interchange for the purchase of products. The orders are received in Connecticut and entered into U.S. Surgical's computer system in Connecticut. Within twenty-four hours of shipment of each indi-vidual order, U.S. Surgical sends the customer an invoice which includes Standard Terms and Conditions of Sale, including specific modifications of terms as negotiated between U.S. Surgical and the customer. The invoice states that the contract shall be governed by and construed under the laws of the State of Connecticut. Each product shipment also includes a shipping document.

The packaging for U.S. Surgical's disposable medical instruments is labeled "for single use only." As an example, one label contains the following language: "Unless opened or damaged, contents of package are sterile. DO NOT RESTERILIZE. For multiple use during a SINGLE surgical procedure. DISCARD AFTER USE." The instruction booklets contain similar language in the "Cautions" section: "These devices are provided STERILE and are intended for use during a SINGLE procedure only. DISCARD AFTER USE. DO NOT RESTERILIZE."

Orris provides a service to the hospitals that purchase U.S. Surgical's disposable instruments. After the hospitals use or open the instruments, Orris cleans, resterilizes, and/or resharpens the instruments for future use and returns them to the hospitals from which they came. In the past, Orris marketed its service by indicating that the reprocessed instruments have "restored original quality" and are "as good as new." Presently, Orris only suggests that the instruments will function as the manufacturer intended.

After a hospital requests Orris' service, Orris conducts in-service training to inform hospital personnel about the service it provides. Orris also meets with surgeons at the hospitals to inform them of its service. Orris then arranges to collect the instruments that a hospital wishes to have reprocessed. After Orris reprocesses the instruments, each is returned in packaging with a label displaying Orris' name and location and noting that the instrument was reprocessed by Orris. No change in ownership of the instruments takes place between Orris and the hospitals.

U.S. Surgical admits that Orris may resterilize opened but unused instruments not-

1. The court collectively refers to all defendants in this case as Orris.

withstanding the "do not resterilize" language. The Food and Drug Administration requires the "single use only" or similar language on the labels of instruments that U.S. Surgical designates as disposable. The same or similar "single use only" language is also used on U.S. Surgical's non-patented disposable instruments. The only significant difference between U.S. Surgical's labels for its patented and non-patented instruments are that the labels for the patented instruments contain the U.S. patent number. Beginning in November 1995, U.S. Surgical began asserting that reprocessing, repackaging and reuse of its disposable instruments constituted a violation of its patent and trademark rights.

U.S. Surgical offers the survey evidence of Jacob Jacoby, Ph.D. Dr. Jacoby conducted a survey to determine if surgeons could differentiate between new instruments and reprocessed instruments. Although the survey indicated that fifty-four percent of the surgeons surveyed whose hospitals use Orris' services did not know that the hospital was using Orris' services, the survey expert did not verify that any of the hospitals were actually using Orris' services. U.S. Surgical offered the affidavits of two physicians, and the deposition testimony of another, at one hospital who were unaware of the hospital's use of Orris' services.

Although Orris returns the reprocessed instruments in properly marked packaging, surgeons generally do not see the packaging. Surgeons fill out "preference cards" regarding the instruments that they wish to use in a surgical procedure. Prior to surgery, operating room personnel gather, lay-out, and generally remove the packaging from instruments that may be used. Hospitals, however, are able to keep records of whether new or reprocessed instruments are used in surgery.[2]

Orris returns the used, reprocessed medical instruments to the hospitals with U.S. Surgical's trademarks still emblazoned on them. Orris does not place any permanent mark of its own on the reprocessed instru-

ments. The reprocessed instrument appears identical to a brand new instrument. The instruments' sterility cannot be judged visually. The hospitals utilizing Orris' services also continue to purchase new instruments from U.S. Surgical. Surgeons and hospitals recognize that U.S. Surgical's trademarks signify superior quality of goods, the source of which is U.S. Surgical. If a used, reprocessed disposable instrument is not sterile, the instrument could cause a patient to suffer an infection or a foreign body reaction, either of which could have fatal consequences.

Additional facts will be provided as necessary.

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial.

2. U.S. Surgical withdrew its expert witness' affidavit which otherwise would have controverted this fact.

*Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. "A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials. of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984).

### III. ANALYSIS

U.S. Surgical requests summary judgment on its patent and trademark infringement claims. Orris requests summary judgment on all of U.S. Surgical's claims.

### A. Patent Infringement

■ "Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "Liability for either active inducement of infringement or for contributory infringement is dependent upon the existence of direct infringement." *Joy Tech., Inc. v. Flakt, Inc.,* 6 F.3d 770, 774 (Fed.Cir.1993) (citing *Deepsouth Packing Co. v. Laitram Corp.,* 406 U.S. 518, 526, 92 S.Ct. 1700, 32 L.Ed.2d 273 (1972)). U.S. Surgical claims that Orris violated the patent laws by actively inducing the hospitals' infringement of, or by directly infringing, U.S. Surgical's medical instrument patents by reprocessing the instruments for reuse.

■ "[A]n unconditional sale of a patented device exhausts the patentee's right to control the purchaser's use of the device thereafter ... [because] the patentee has bargained for, and received, an amount equal to the full value of the goods." *B. Braun Med., Inc. v. Abbott Labs.,* 124 F.3d 1419, 1426 (Fed.Cir.

1997). The courts, however, generally enforce expressly conditional sales because they are the parties' bargained-for limitation on the right to use the device. *Id.*

■ If a patentee sells a patented device, the law implies a license to the extent necessary to make the contract effective. *McCoy v. Mitsuboshi Cutlery, Inc.,* 67 F.3d 917, 920 (Fed.Cir.1995). The implied license, however, extends only to the useful life of the product. *Kendall Co. v. Progressive Med. Tech., Inc.,* 85 F.3d 1570, 1573 (Fed.Cir. 1996). The implied license to use the product includes the right to repair the patented product. *Id.* "A purchaser's right to use a patented device does not extend to reconstructing it for reconstruction is deemed analogous to construction of a new device." *Mallinckrodt, Inc. v. Medipart, Inc.,* 976 F.2d 700, 709 (Fed.Cir.1992) (citation omitted). U.S. Surgical argues that the "single use only" language on its packaging limited the implied license to use the instruments or, in the alternative, that Orris' reprocessing constituted impermissible reconstruction.

### 1. Single-use restriction

■ U.S. Surgical contends that the "single use only" labels created a contractually enforceable restriction on the implied license limiting the hospitals' use of the instruments to a single surgical procedure.[3] Such a limitation on the implied license could arise if the "single use only" language was a valid condition of the sale, *see McCoy,* 67 F.3d at 920 (law implies license to extent necessary to make contract effective), or if the language was a limitation on the implied license independent of the sales contract.

The sale of medical instruments is governed by Article 2 of the Uniform Commercial Code.[4] U.S. Surgical argues, and the

---

3. U.S. Surgical, in its response brief, expressly abandoned any argument that the "single use only" language constituted a patent license, independent of the implied license, restricting the hospitals to single use. Moreover, only the instrument label language is at issue in this case. *See United States Surg. Corp. v. Orris, Inc.,* No. 96–2300–GTV, 1997 WL 756606, at *5 (D.Kan. Nov.17, 1997) (granting motion to exclude evidence of contract term other than product labels).

4. Both Kansas and Connecticut have adopted the model version of the applicable U.C.C. provisions. *See* K.S.A. 84–2–207 and –2–209; Conn. Gen.Stat. §§ 42a–2–207 and 42a–2–209. Moreover, the court sees no distinction between the two states with respect to the general contract law principles involved in this case. The court, therefore, will rely on Kansas law. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 816, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) ("There can

court agrees, that each sales contract was concluded when U.S. Surgical received customer orders in Connecticut. Thus, the "single use only" language that appeared on the product label and instructions was a proposed post-sale modification of the agreement under U.C.C. § 2–209. *Arizona Retail Sys., Inc. v. Software Link, Inc.*, 831 F.Supp. 759, 764 (D.Ariz.1993).

Section 2–209 allows a modification to an existing agreement without independent consideration. Nonetheless, the post-sale proposed "single use only" restriction required assent by the customers to become a binding term of the sales agreement. *See Southwest Engineering Co. v. Martin Tractor Co.*, 205 Kan. 684, 693–94, 473 P.2d 18, 25–26 (1970) (proposed post-sale change in terms of sales agreement had no legal effect because other party did not accept the change). "[A] writing will be a final expression of, or a binding modification to, an earlier agreement only if the parties so intend." *Step–Saver Data Sys., Inc. v. Wyse Tech.*, 939 F.2d 91, 98 (3d Cir.1991). "[T]he assent must be express and cannot be inferred merely from a party's conduct in continuing with the agreement." *Arizona Retail*, 831 F.Supp. at 764.

Even if the product label is considered a written confirmation of the order under U.C.C. § 2–207, the "single use only" term is not binding on the customer if the additional term materially alters the agreement and the customer does not confirm the seller's expressly conditional acceptance requiring the additional term or otherwise expressly assent to the additional term. *Transamerica Oil Corp. v. Lynes, Inc.*, 723 F.2d 758, 765 (10th Cir.1983) (interpreting Kansas law); *Step–Saver*, 939 F.2d at 99. Any reasonable trier of fact would conclude that, in a product sales context, a term that reduces the customer's right to use the product from unlimited use to a single use materially alters the contract. Moreover, the label did not expressly condition the seller's acceptance of the customer's offer on the customer's allowance of the additional term. The label stated only, "for single use only."

The express assent analysis is the same under §§ 2–207 and 2–209. *See Step–Saver*, 939 F.2d at 98–99 (finding no assent under § 2–207); *Arizona Retail*, 831 F.Supp. at 764–65 (applying *Step–Saver* analysis and finding no assent under § 2–209). Neither U.S. Surgical nor the court's own exhaustive search of the record produces evidence of any express assent to the subsequent modification to the agreement. A hospital's mere compliance with the previously entered agreement did not constitute assent or indicate any intent to adopt the "single use only" language as a modification to the agreement. Accordingly, under either § 2–207 or § 2–209, the "single use only" term was not a binding term of the sales agreement.

■ U.S. Surgical also argues that the term is a limitation on the implied license. The implied license is governed by general contract principles. *McCoy*, 67 F.3d at 920. An implied license to use arises at the time of the sale of the instrument. *See Braun*, 124 F.3d at 1426; *Kendall*, 85 F.3d at 1573 (citing *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 484, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964) (*Aro II* )). "The right of one party to make unilateral changes in the terms of a contract is generally available only to those who expressly provide for this right in the agreement." *Rupe v. Triton Oil & Gas Corp.*, 806 F.Supp. 1495, 1502 (D.Kan. 1992). "To modify an existing agreement, either by expressed assent or by assent implied from conduct of the parties, the agreement to modify must be supported by an independent consideration." *Augusta Med. Complex, Inc. v. Blue Cross of Kansas, Inc.*, 227 Kan. 469, 474, 608 P.2d 890, 894 (1980). Because the license is implied from the sale of the product, there is no express term allowing unilateral changes by U.S. Surgical. Moreover, there is no action by the customers which constitutes assent, nor is there any independent consideration. Further, there is no independent consideration to support a modification of the existing license. Thus, the added term is not part of the implied license to use the product.

be no injury in applying Kansas law if it is not in conflict with that of any other jurisdiction connected to this suit.").

Even if the license did not arise prior to the arrival of the goods including the product label, U.S. Surgical's argument fails because the parties did not have the requisite intent to include the "single use only" language as a limitation on the license. If an implied license exists,

> [w]e must further look to the circumstances of the sale to determine the scope of the implied license. This determination must be based on what the parties reasonably intended as to the scope of the implied license based on the circumstances of the sale. One party's unilateral expectations as to the scope of the implied license are irrelevant.

*Carborundum Co. v. Molten Metal Equip. Innovations, Inc.,* 72 F.3d 872, 878 (Fed.Cir. 1995).

Here, the parties clearly did not intend the "single use only" language to limit the implied license to use. U.S. Surgical admits that it did not consider the "single use only" language to be a condition of sale prior to this litigation. Moreover, U.S. Surgical advises hospitals that they may resterilize open but unused packages of U.S. Surgical's single use instruments despite the "do not resterilize" language. U.S. Surgical never trained its sales representatives that reprocessing or resterilization would constitute patent infringement, but instead trained the representatives that such conduct would absolve U.S. Surgical from any future liability for that instrument. U.S. Surgical's representative in charge of contract administration did not know if the "single use only" language was a condition of the contract of sale.

The language used on the packaging was required by the FDA to be placed on all disposable instruments. The same language was also placed in the "Cautions" section of the instructions. The evidence is uncontroverted that the only purposes in placing the "single use only" language on the instruments were to comply with FDA regulations and to limit liability resulting from reuse. The court finds no evidence that either U.S. Surgical or the hospitals intended that the "single use only" language be a limitation on the implied license to use the instruments.

*2. Repair/reconstruction of patented article*

■ Whether Orris' reprocessing of U.S. Surgical's instruments constitutes repair or reconstruction is a question of law. *Aktiebolag v. E.J. Co.,* 121 F.3d 669, 672 (Fed.Cir. 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1337, 140 L.Ed.2d 499 (1998). U.S. Surgical asserts that Orris directly infringed the patents by reprocessing the instruments because such reprocessing constitutes reconstruction of the patented instruments. The court disagrees.

"The Supreme Court has taken an expansive view of what constitutes a permissible repair." *Id.* "[A] license to use a patented combination includes the right to preserve its fitness for use so far as it may be affected by wear or breakage." *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 365 U.S. 336, 345, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961) (*Aro I* ). An entire line of cases has held that cleaning patented articles for reuse is permissible repair. *See Wilbur–Ellis Co. v. Kuther,* 377 U.S. 422, 424, 84 S.Ct. 1561, 12 L.Ed.2d 419 (1964); *Dana Corp. v. American Precision Co.,* 827 F.2d 755, 756–57 (Fed.Cir.1987); *General Elec. Co. v. United States,* 215 Ct.Cl. 636, 572 F.2d 745, 785 (1978). Orris reprocesses U.S. Surgical's instruments by cleaning, resterilizing, and resharpening them. Accordingly, Orris' conduct does not constitute reconstruction of the patented instruments.

In *Wilbur–Ellis,* the defendant acquired fish-canning machines that were corroded, rusted, and inoperative. 377 U.S. at 423, 84 S.Ct. 1561. The defendant cleaned and sandblasted the machines to make them operable and resized the elements to enable the machines to pack five-ounce cans instead of one-pound cans. *Id.* The Supreme Court stated:

> These four machines were not spent; they had years of usefulness remaining though they needed cleaning and repair. Had they been renovated and put to use on the [one-pound] cans, there could be no question but that they were repaired, not reconstructed, within the meaning of the cases.

*Id.* at 424, 84 S.Ct. 1561. Moreover, the Court concluded that, even considering the resizing, the defendant's conduct amounted to permissible repair. *Id.* at 425, 84 S.Ct. 1561. Here, Orris reprocess U.S. Surgical's instruments by cleaning, sterilizing, and sharpening the instruments. U.S. Surgical does not allege that Orris changes the instruments other than to make them reusable. Under *Wilbur–Ellis,* Orris' conduct *a fortiori* constitutes permissible repair.

U.S. Surgical argues that the "single use only" language evinces its intent to limit use of the instruments. Although U.S. Surgical's intent may be relevant, *see Aktiebolag,* 121 F.3d at 673–74 (patentee's intent is relevant but not determinative), the intent of the patentee to limit the post-sale use of the patented article does not transform permissible repair into impermissible reconstruction. *See Hewlett–Packard Co. v. Repeat-O-Type Stencil Mfg. Corp.,* 123 F.3d 1445, 1453 (Fed. Cir.1997), *cert. denied,* — U.S. ——, 118 S.Ct. 1304, 140 L.Ed.2d 470 (1998). In *Hewlett–Packard,* the plaintiff manufactured non-refillable cartridges for use in ink jet printers. *Id.* at 1448. The instructions that accompanied the cartridge stated "Discard old print cartridge immediately." *Id.* Moreover, the plaintiff clearly established that it did not intend that the cartridges be refillable. *Id.* Nonetheless, the defendant purchased the cartridges, modified them to be refillable, and resold them as refillable ink jet cartridges. *Id.* Despite the plaintiff's evidence of intent to limit the use of the cartridges, the Federal Circuit held that the defendant's conduct constituted permissible repair. *Id.* at 1451.

Likewise, in the present circumstances in which Orris made no modifications to the instruments, if U.S. Surgical proved intent to limit the use of the instruments, such intent would not preclude the court's conclusion that Orris' conduct constituted permissible repair. Moreover, the court has already held that U.S. Surgical's intent here was not to limit the use of the instruments, but to limit its own liability arising from any reuse. Adopting U.S. Surgical's rationale would allow U.S. Surgical to unilaterally impose a license limitation on the hospitals' use of the instruments. Accordingly, summary judg-

ment is granted on the patent infringement claim.

**B.  Trademark Infringement and Unfair Competition**

■ Orris' use of U.S. Surgical's trademarks is a necessary prerequisite to U.S. Surgical's federal and state trademark infringement and unfair competition claims. *See* 15 U.S.C. § 1114(1) (applying to any person who shall *"use [a trademark] in commerce "*); 15 U.S.C. § 1125(a)(1) (applying to any person who *"uses in commerce any [false designation.] "*); Restatement (Third) of Unfair Competition § 20 (1995) (applying to any actor who *"uses [another's] designation "*). Repairing trademarked goods, without more, does not constitute use of the trademark. *See, e.g., Volkswagenwerk Aktiengesellschaft v. Church,* 411 F.2d 350, 352 (9th Cir.1969) (no prohibition in specializing in repair of trademarked automobiles); *Trail Chevrolet, Inc. v. General Motors Corp.,* 381 F.2d 353, 354 (5th Cir.1967) (implicitly recognizing right to repair trademarked automobiles); *Volkswagenwerk, AG v. Smith,* 471 F.Supp. 385, 388 (D.N.M.1979) (same); *Ford Motor Co. v. Helms,* 25 F.Supp. 698, 699 (E.D.N.Y.1938) (same).

■ U.S. Surgical argues that repairing or reconditioning trademarked items without removing the original trademark may constitute use of U.S. Surgical's trademarks. U.S. Surgical cites two lines of cases involving repair or reconditioning: the resale cases and the advertising cases. The resale cases involve a defendant that reconditions a product and resells it with the original trademark on it. *See, e.g., Champion Spark Plug Co. v. Sanders,* 331 U.S. 125, 128–29, 67 S.Ct. 1136, 91 L.Ed. 1386 (1947). In that circumstance, however, the defendant uses the trademark not in its actual repair of the product, but in its sale of the item because consumers rely on the trademark and the quality it represents. The advertising cases involve a defendant using the plaintiff's trademark in an advertisement in which the defendant promotes its repairs of the plaintiff's trademarked goods (i.e., Volkswagen repair). *See, e.g., Church,* 411 F.2d at 352. The advertise-

ment, not the actual repair, constitutes use of the trademark.

U.S. Surgical's argument fails in this case because it offers no evidence that Orris either resells the instruments or advertises that it repairs the instruments. U.S. Surgical only challenges Orris' conduct in receiving, reprocessing, and returning the instruments. As noted earlier, Orris cleans, resterilizes, and resharpens the instruments as necessary, and returns the instruments with the original trademark still emblazoned on them to the hospitals that originally purchased the instruments from U.S. Surgical. U.S. Surgical cannot point the court to a single case in which the repair of a trademarked item alone is sufficient to subject the defendant to trademark or unfair competition liability. The court finds that such conduct does not constitute use of U.S. Surgical's trademarks. Accordingly, U.S. Surgical may not invoke the federal and state trademark and unfair competition laws to prevent Orris' reprocessing of U.S. Surgical's trademarked instruments.

Even if Orris' conduct did amount to use of U.S. Surgical's trademarks, in order to invoke the trademark and unfair competition protections here, U.S. Surgical must show a "likelihood of confusion" to succeed on its claims. See Amoco Oil Co. v. Rainbow Snow, 748 F.2d 556, 557–58 (10th Cir.1984) (§ 1114(1) trademark infringement, § 1125 false designation of origin unfair competition, state law claims of infringement and unfair competition). U.S. Surgical, as the plaintiff, bears the burden to prove a likelihood of confusion. Universal Money Centers, Inc. v. American Tel. & Tel. Co., 22 F.3d 1527, 1530 (10th Cir.1994). Moreover, U.S. Surgical must show a probability, not just a possibility, of confusion. 3 J. Thomas McCarthy, Trademarks and Unfair Competition § 23:3 (4th ed.1997); see also Blue Bell Bio–Medical v. Cin–Bad, Inc., 864 F.2d 1253, 1260 (5th Cir.1989); Rodeo Collection, Ltd. v. West Seventh, 812 F.2d 1215, 1217 (9th Cir.1987). Although likelihood of confusion is a question of fact, the court must grant summary judgment if U.S. Surgical does not present sufficient evidence for a jury to find a likelihood of confusion. Universal Money 22 F.3d at 1530 n. 2.

Several factors are relevant to the "likelihood of confusion" analysis, including "(a) the degree of similarity between the designation and the trademark; (b) the intent of the actor in adopting the designation; (c) the relation in use and manner of marketing between the goods or services marketed by the actor and those marketed by the other; [and] (d) the degree of care likely to be exercised by purchasers." Payless Shoesource, Inc. v. Reebok Int'l Ltd., 998 F.2d 985, 988 (Fed.Cir.1993) (citing Beer Nuts, Inc. v. Clover Club Foods Co., 711 F.2d 934, 940 (10th Cir.1983)) (internal quotations and alterations omitted). The similarity of the marks deserves little attention in the repair/rebuild context because the right to repair or rebuild a trademarked product without removing the original mark is well established. See Champion Spark Plug, 331 U.S. at 129, 67 S.Ct. 1136; Prestonettes, Inc. v. Coty, 264 U.S. 359, 368, 44 S.Ct. 350, 68 L.Ed. 731 (1924); Brandtjen & Kluge, Inc. v. Prudhomme, 765 F.Supp. 1551, 1567 (N.D.Tex.1991).

U.S. Surgical has failed to offer any evidence that Orris intended to confuse or deceive in reprocessing instruments with U.S. Surgical's trademarks. Conversely, Orris' actions in marketing its service indicate an intent to avoid any confusion. Orris' advertising does not imply that it is an authorized agent of U.S. Surgical. At the outset, Orris conducts in-service training and holds meetings with surgeons and other hospital personnel to inform them regarding Orris' services. See Astra Pharmaceutical Prods., Inc. v. Beckman Instr., Inc., 718 F.2d 1201, 1206–07 (1st Cir.1983) (training and availability of Orris's staff may prevent likelihood of confusion). After Orris cleans, resterilizes, and/or resharpens the instruments, it returns the instruments in packages labeled "reconditioned" that contain Orris' name and address. Orris returns each instrument to the same hospital that purchased the instrument from U.S. Surgical. U.S. Surgical admits that the instruments are maintained in such packaging until hospital staff removes the packaging immediately prior to surgery. Or-

ris' actions in marketing its services and in repairing and returning the instruments evince an effort to avoid confusion.

The purchasers' likely degree of care also indicates a lack of likelihood of confusion. The court must first clarify whose potential confusion may be considered. "[I]n the case of goods and services that are sold, the inquiry generally will turn on whether actual or potential 'purchasers' are confused.... If likelihood of confusion exists, it must be based on the confusion of some relevant person; i.e., a customer or purchaser." *Electronic Design & Sales, Inc. v. Electronic Data Sys. Corp.*, 954 F.2d 713, 716 (Fed.Cir. 1992) (citations and quotation marks omitted). "For commercially sold items, only those users who might influence future purchases can be considered 'relevant persons.'" *Id.* at 718. Here, there is no dispute that only hospitals purchase U.S. Surgical's instruments and Orris' services and that there is no likelihood of confusion with respect to the hospitals themselves.

U.S. Surgical instead relies on the alleged confusion of patients and surgeons to support its claims. U.S. Surgical, however, has failed to offer any evidence that patients somehow influence a hospital's instrument-purchasing decisions and the court is unwilling to assume so. *See id.* The confusion of patients, therefore, is irrelevant.[5] Surgeons, on the other hand, may be involved in surgical-instrument-purchasing decisions made by hospitals. *See American Optical Corp. v. Siemens Aktiengesellschaft*, 213 U.S.P.Q. 510, 516 (Trademark Tr.& App. Bd.1982). Such surgeons' confusion is relevant to the extent such confusion affects a hospital's purchasing decisions. *See Electronic Design*, 954 F.2d at 717 (insufficient to show damage to reputation without consequent reduction in sales).

U.S. Surgical must show a likelihood of confusion among surgeons that may affect a hospital's purchasing decisions. Surgeons constitute a "highly intelligent and discriminating public." *Warner–Hudnut, Inc. v. Wander Co.*, 47 C.C.P.A. 1172, 280 F.2d 435, 436 (Cust.&Pat.App.1960); *see also Astra*

*Pharmaceutical*, 718 F.2d at 1206–07. "[S]ophistication is important and often dispositive because sophisticated consumers may be expected to exercise greater care." *Electronic Design*, 954 F.2d at 718 (citing *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 489 (1st Cir.1981)) (internal quotations and alterations omitted).

U.S. Surgical's evidence of alleged likelihood of confusion consists of a survey and surgeon affidavits purporting to show actual confusion. Neither the affidavits nor the survey show any actual confusion. The affiants are unaware whether they have ever used a reprocessed instrument and U.S. Surgical provides no independent verification of that fact. The actual confusion of the survey respondents was based on their identification of a new surgical instrument as used. That confusion is irrelevant here. The survey does not show that surgeons mistook a reprocessed instrument for a new instrument. Although the reverse mistaken identification may be relevant to the likelihood of confusion analysis, the relevance extends only to the effect of Orris taking U.S. Surgical's good will. U.S. Surgical does not allege, nor could they, that surgeons mistakenly believed U.S. Surgical's instruments came from Orris. The instruments still contain U.S. Surgical's trademark. Thus, U.S. Surgical has failed to show any actual confusion.

Neither does the survey otherwise show a likelihood of confusion. U.S. Surgical relies on an alleged lack of knowledge of certain surgeons that Orris is providing services at the surgeons' respective hospitals. The survey conductor, however, did not verify that the surgeons' respective hospitals actually employ Orris' services. U.S. Surgical also relies on results regarding surgeons who influence the purchasing decisions and surgeons who do not see the instrument packaging prior to surgery. The surgeons' confusion, however, is relevant only to the extent those results are combined because surgeons involved in purchasing decisions are expected to use a much higher degree of care. *See Astra Pharmaceutical*, 718

---

5. Even if the court found that patients' confusion is relevant, U.S. Surgical has failed to offer any evidence of a likelihood of patient confusion.

Moreover, the court has serious doubts regarding whether a patient would ever see a highly-intrusive surgical instrument's trademark.

F.2d at 1206–07. U.S. Surgical's survey supplies minimal, if any, support for a finding of likelihood of confusion.

An additional reason stands in the way of U.S. Surgical creating a genuine issue of fact whether there was a likelihood of confusion. The surgeons' confusion is relevant only to the extent it influences a hospital's purchasing decisions. *See Electronic Design*, 954 F.2d at 717. The circumstances here are such that any confusion on the part of the surgeons will not affect the hospital's purchasing decisions. To the extent surgeons are unaware when they are using reprocessed instruments, the hospitals may look to their records to ascertain whether new or used instruments were used in a surgical procedure. Thus, the hospital's purchasing decisions cannot be affected by any potential confusion of the surgeons. U.S. Surgical has failed to raise a genuine issue of material fact whether Orris' services are likely to cause confusion. Accordingly, U.S. Surgical's trademark and unfair competition claims are dismissed.

*C. Tortious Interference*

U.S. Surgical asserts claims of tortious interference with contract and with business expectancy. U.S. Surgical's tortious interference with contract claim relies on the existence of a contract restricting the hospitals' use of the disposable instruments to a single use. Because the court concludes that the single-use restriction is not part of the contract between U.S. Surgical and the hospitals, U.S. Surgical's tortious interference with contract claim is dismissed. For the same reason, the court concludes that U.S. Surgical has no business expectancy that, in the future, it will sell instruments to the hospitals pursuant to contracts limiting the hospitals' use of the instruments. Accordingly, the tortious interference with business expectancy claim is dismissed.

Orris also contends that both tortious interference claims should be dismissed because Orris did not commit any wrongful acts. The court agrees. "The necessary elements of a cause of action in tortious interference with business relations are the existence of a business relationship, an intentional and improper interference with that relationship and a resulting loss of benefits of the relationship." *Conrad v. Erickson*, 41 Conn.App. 243, 675 A.2d 906, 907 (1996).[6] "[A] cause of action for tortious interference with a contractual or business relationship requires intentional tortious conduct which is fraudulent in nature." *Selby v. Pelletier*, 1 Conn.App. 320, 472 A.2d 1285, 1288 (1984). Negligence alone is insufficient conduct to support a claim of tortious interference. *See id.* at 1289.

In a tortious interference claim, the plaintiff has the burden to prove some improper motive or improper means. *Blake v. Levy*, 191 Conn. 257, 464 A.2d 52, 55 (1983). A competitor does not improperly interfere with a party's business expectancy if: (1) the conduct relates to an area of competition between the parties; (2) the competitor does not employ wrongful means; (3) the competitor's conduct is not an unlawful restraint of trade; and (4) his purpose is to advance his competitive interests. Restatement (Second) of Torts § 768 (1979).

U.S. Surgical contends that Orris employed wrongful means by infringing U.S. Surgical's patents and trademarks and by misrepresenting the quality of Orris' services. As stated previously, however, the court finds that Orris did not infringe U.S. Surgical's patents or trademarks. The alleged misrepresentations were that Orris' services would restore the instruments to their original quality, that the instruments would be as good as new, and that the instruments would function as intended by the manufacturer.

Although fraudulent misrepresentation in competition constitutes wrongful means, merely negligent or innocent misrepresentation is insufficient. *See DP–Tek, Inc. v. AT & T Global Info. Solutions Co.*, 100 F.3d 828,

---

**6.** The court will apply Connecticut law to plaintiff's tort claims because plaintiff is headquartered in Connecticut and any injury would be felt there. *See St. Paul Furniture Mfg. Co. v. Berg-*

*man*, 935 F.Supp. 1180, 1187 (D.Kan.1996) (holding that Illinois law applies to tort claim brought by corporation based in Illinois).

836 (10th Cir.1996) (the plaintiff's extolling the virtues of its own product while disparaging competitor's product not actionable without evidence of knowing or intentional misrepresentation); *W. Oliver Tripp Co. v. American Hoechst Corp.*, 34 Mass.App.Ct. 744, 616 N.E.2d 118, 124–25 (1993) (puffery combined with reverse puffery not actionable without evidence of intentional misrepresentation); *accord Waldrep Brothers Beauty Supply, Inc. v. Wynn Beauty Supply Co.*, 992 F.2d 59, 63–64 (4th Cir.1993) (promising better service is protected competition); *Amerinet, Inc. v. Xerox Corp.*, 972 F.2d 1483, 1506–07 (8th Cir.1992) (disparaging competitor's product is protected competition). Moreover, "mere predictions about events to occur in the future have not been considered actionable as misrepresentations." *Consolidated Mktg. Corp. v. Carol Cable Co.*, No. H 81–262(JAC), 1985 WL 5956, at *3 (D.Conn. Nov. 20, 1985). Nor does offering the product for sale to a competitor's customers amount to actionable interference. *McKeown Distribs., Inc. v. Gyp–Crete Corp.*, 618 F.Supp. 632, 644 (D.Conn.1985). U.S. Surgical has failed to support its claim with any evidence that Orris knowingly misrepresented the quality of Orris' services. Orris merely extolled the virtues of its services. Accordingly, U.S. Surgical's tortious interference claims are dismissed.

*D. Orris' Counterclaims* [7]

Orris asserts counterclaims alleging that if the "for single use only" label creates a restriction on the implied license to use the instruments, such restriction violates §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. As previously stated, the label does not create a valid restriction on the implied license to use. Accordingly, Orris' counterclaims are also dismissed.

IT IS THEREFORE ORDERED that Orris' motion (Doc. 174) for summary judgment is granted.

---

**7.** The actual name of the counterclaimant is Crystal Medical Technologies, Inc. d/b/a Orris, Inc.

**1.** The instant motion was actually titled "Defendant's Motion for Clarification Regarding Dis-

IT IS FURTHER ORDERED that U.S. Surgical's motion (Doc. 168) for partial summary judgment is denied as moot.

IT IS FURTHER ORDERED that Orris' counterclaims are dismissed.

IT IS FURTHER ORDERED that all remaining pending motions (Docs.394, 405, 413, 421, 425) are denied as moot.

Copies of this memorandum and order shall be mailed to counsel of record for the parties.

The case is closed.

**IT IS SO ORDERED.**

### MEMORANDUM AND ORDER

Plaintiff United States Surgical Corporation brought this action claiming that defendant Orris, Inc.'s process of cleaning, resterilizing, and resharpening medical instruments constitutes trademark infringement under 15 U.S.C. § 1114, unfair competition under 15 U.S.C. § 1125(a), patent infringement under 35 U.S.C. § 271, common law unfair competition, and tortious interference with contract and business expectancy. Crystal Medical Technologies, Inc. d/b/a Orris, Inc. asserted antitrust counterclaims alleging that plaintiff's conduct violates §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. The case is before the court on Crystal Medical Technologies' motion (Doc. 436) to alter or amend judgment.[1] For the reasons set forth below, the motion is granted.

On April 29, 1998, the court granted defendants' motion for summary judgment on plaintiff's claims. In the Memorandum and Order granting the motion, the court expressly found that the labels included on plaintiff's instruments did not create a valid restriction on the implied license to use the instruments. Crystal Medical Technologies' counterclaims alleged that if the "for single use only" label creates a restriction on the implied license to use the instruments, such restriction violates §§ 1 and 2 of the Sher-

---

missal of Defendant's Counterclaims." Both parties, however, acknowledge that it was brought under Fed.R.Civ.P. 59(e) to alter or amend the judgment.

man Act. Because the counterclaims were expressly contingent on the existence of the restriction, the court *sua sponte* dismissed defendant's counterclaims.

Crystal Medical Technologies now asserts that it mistakenly drafted the counterclaims to be contingent upon the labels actually creating a valid restriction on use. Crystal Medical Technologies argues that it could and would have amended its answer to state antitrust counterclaims regardless of whether the labels created a valid restriction. Accordingly, Crystal Medical Technologies contends that it should have been given notice of the court's intent to dismiss and an opportunity to amend its counterclaims. The court agrees.

The court dismissed the counterclaims, under Fed.R.Civ.P. 12(b)(6), for failure to state a claim for which relief can be granted. "Under Rule 12(b)(6), a [party] with an arguable claim is ordinarily accorded notice of a pending motion to dismiss for failure to state a claim and an opportunity to amend the complaint before the motion is ruled upon." *Neitzke v. Williams,* 490 U.S. 319, 329, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A court may *sua sponte* dismiss claims, but "[s]uch a dismissal is appropriate only where it is 'patently obvious that the [party] could not prevail on the facts alleged, and allowing [it] an opportunity to amend [its counterclaims] would be futile.'" *Whitney v. New Mexico,* 113 F.3d 1170, 1174 (10th Cir.1997) (quoting *McKinney v. Oklahoma,* 925 F.2d 363, 365 (10th Cir.1991)); *see also Alley v. Resolution Trust Corp.,* 984 F.2d 1201, 1207 (D.C.Cir. 1993) (reversing 12(b)(6) dismissal because party was not given opportunity to amend); *Bank v. Pitt,* 928 F.2d 1108, 1112 (11th Cir. 1991) (reversing 12(b)(6) dismissal without opportunity to amend despite lack of request for leave to amend); *Salibra v. Supreme Court of Ohio,* 730 F.2d 1059, 1062 (6th Cir. 1984) (finding 12(b)(6) dismissal inappropriate without opportunity to amend).

Because the counterclaims were dismissed *sua sponte,* Crystal Medical Technologies did not receive notice that the court was considering dismissal. The court concludes that Crystal Medical Technologies' motion should be granted because it has an arguable claim, it had no opportunity to request leave to amend, and the proposed amendment would not be futile. Moreover, Fed.R.Civ.P. 15(a) provides that "leave [to amend] shall be freely given when justice so requires." Accordingly, Crystal Medical Technologies' motion to alter or amend judgment is granted.

Crystal Medical Technologies asserts in its pleadings that dismissal without prejudice may be preferable to reinstatement of the counterclaims. Dismissal without prejudice would best serve judicial economy because the same parties are involved in another pending action involving antitrust claims that will require substantially the same evidence as the instant claims. Accordingly, the antitrust claims here are dismissed without prejudice.

IT IS THEREFORE ORDERED that Crystal Medical Technologies' motion (Doc. 436) to amend or alter judgment is granted and its counterclaims are dismissed without prejudice.

Copies of this memorandum and order shall be mailed to counsel of record for the parties.

The case is closed.

**IT IS SO ORDERED.**