# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

KARL STORZ ENDOSCOPY-AMERICA,
INCORPORATED,
          *Plaintiff-Appellant,*

v.                                              No. 00-1032

FIBER TECH MEDICAL, INCORPORATED,
          *Defendant-Appellee.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William N. Nickerson, District Judge.
(CA-98-869-WMN)

Argued: October 31, 2000

Decided: February 5, 2001

Before WILLIAMS and MICHAEL, Circuit Judges, and
Joseph F. ANDERSON, Jr., Chief United States District Judge
for the District of South Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Mark Richard Kravitz, WIGGIN & DANA, New Haven, Connecticut, for Appellant. David Henry Bamberger, PIPER, MARBURY, RUDNICK & WOLFE, L.L.P., Washington, D.C., for Appellee. **ON BRIEF:** Susan H. Pope, PIPER, MARBURY, RUDNICK & WOLFE, L.L.P., Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

I.

This appeal arises from an action for trademark infringement and false designation of origin under sections 32(1)(a) and 43(a) of the Lanham Trade-Mark Act, 15 U.S.C. §§ 1114(1)(a) and 1125(a). Appellant Karl Storz Endoscopy-America ("KSEA") is the exclusive United States distributor for Karl Storz rigid endoscopes. Appellee Fiber Tech Medical, Inc. ("Fiber Tech"), a subsidiary of GE Medical Systems, Inc., repairs and rebuilds damaged rigid endoscopes, including endoscopes of Karl Storz origin, for their owners.

KSEA sought to enjoin Fiber Tech from providing these repair services within the United States based on its concern that the repaired or rebuilt Karl Storz rigid endoscopes may be mistaken by surgeon users for genuine Karl Storz products and thus might injure, trade upon, or appropriate the reputation and goodwill of KSEA and the Karl Storz brand. The district court granted Fiber Tech's motion for summary judgment, finding that the activities at issue did not constitute "use in commerce" and were, therefore, not actionable under the Lanham Act. We now affirm that opinion.

Rigid endoscopes typically are owned by hospitals. It is the hospitals that ordinarily send damaged rigid endoscopes directly to Fiber Tech for repair. The surgeons are, however, the end-users of these instruments. It is, therefore, the surgeons who generally make judgments as to the quality and performance characteristics of the endoscopes, and who greatly influence, if not dictate, purchasing decisions for these instruments.

Fiber Tech provides the hospitals with complete disclosure of the extent of the repairs made. This disclosure is included on paperwork

returned to the hospital, in duplicate. The documentation contains a written request that the end-user be provided with a copy of the documentation of the repair. For present purposes, it is presumed that the actual end-users, the surgeons, do not receive the paperwork. KSEA has also presented evidence that surgeons have, in fact, been confused as to whether they were using an original or rebuilt endoscope.

Accepting the facts stated above as true, the district court granted Fiber Tech's motion for summary judgment based on its conclusion that there was no "use in commerce" as required under the relevant sections of the Lanham Act. The district court held, in critical part, that the Lanham Act requires a "sale to a third party," and Fiber Tech's activities did not, as a matter of law, constitute a sale. Rather, Fiber Tech's activities constituted repair or reconditioning, which is outside the purview of the Act. The validity of this conclusion of the district court is the only issue on appeal.

## II.

This court reviews the district court's grant of summary judgment *de novo*. *Brown & Williamson Tobacco Corp. v. Food & Drug Admin.*, 153 F.3d 155, 160 (4th Cir. 1998). All justifiable factual inferences are drawn in favor of plaintiff-appellant, KSEA:

> The standard that an appellate court applies in reviewing an order which grants summary judgment is the same as that which governs the district court's initial action under Fed. R. Civ. P. 56(c). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The facts, and the inferences to be drawn from the facts, must be viewed in the light most favorable to the party opposing the motion.

*Ballinger v. North Carolina Agric. Extension Serv.*, 815 F.2d 1001, 1004 (4th Cir. 1987) (citations omitted). Issues of statutory construction are reviewed *de novo*. *See, e.g., United States v. Linney*, 134 F.3d 274, 282 (4th Cir. 1998).

For present purposes, therefore, this court accepts the following as true: (1) the delicate and highly sensitive use of rigid endoscopes and the surgeon-users' reliance on their accuracy and consistency; (2) KSEA's extensive investment in building its name and reputation for reliability and accuracy; (3) the extent of Fiber Tech's activities in remanufacturing rigid endoscopes, which, upon completion bear only KSEA's trademarks and trade dress and display no indication of the fact or extent of Fiber Tech's repair or rebuilding; (4) the inability of surgeon-users of the rebuilt endoscopes to visibly identify these instruments as having been modified or rebuilt by Fiber Tech; and (5) the ease with which Fiber Tech could identify itself, rather than KSEA, as the repairer-rebuilder of the non-genuine instruments.

### III.

KSEA sought relief below under section 32(1)(a) (15 U.S.C. § 1114(1)(a)) and section 43(a) (15 U.S.C. § 1125(a)) of the Lanham Act. Section 32 provides that:

> Any person who shall, without the consent of the registrant —
>
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . .
>
> shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1)(a).

Section 43(a) of the Act creates a cause of action against any person who misuses a mark in a manner that is likely to cause confusion, and extends this protection to unregistered marks as well as registered marks and to "any false designation or origin":

Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, symbol or device, . . . or any combination thereof, or any false designation of origin, . . . which —

(A)    is likely to cause confusion, or to cause mistake, or to deceive, as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services or commercial activities by another person . . .

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

In the present case, Fiber Tech has not copied a trademark but has modified a product bearing an existing, true, trademark. It is undisputed that leaving the original marks intact can itself constitute trademark infringement. "The happenstance of having trademarks made by the owner in one's possession, so that one doesn't have to copy them, has no relevance to the purposes of the statute. Indeed, the danger of confusion is even greater because the 'imitation' is not merely colorable, but perfect." *General Elec. Co. v. Speicher*, 877 F.2d 531, 534 (7th Cir. 1989). *See also Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply Inc.*, 106 F.3d 894, 900 (9th Cir. 1997) ("the distinction between using a duplication [of a mark] versus using an original has no relevance to the purposes of trademark law"). The question, therefore, becomes whether the district court improperly restricted the meaning of the phrase "use in commerce" to require a sale when it stated that "repair or reconditioning of a trademarked item [has never been held to be covered by the Lanham Act] absent the sale to a third party."

As an initial matter, this court does not read the district court's opinion (as appellant would), to limit "use in commerce" to sales. Rather, this court reads the district court's "sale" requirement only to limit that category of cases where the challenged activity involves repair or rebuilding of a trademarked product, without advertising or

other distribution efforts suggesting authorization or endorsement by the owner of the mark.

After careful analysis of the limited authority available on this issue, this court concludes, as did the district court, that the Lanham Act does not apply in the narrow category of cases where a trademarked product is repaired, rebuilt or modified at the request of the product's owner. This ruling presumes that there is no misrepresentation of the repairer's authority to the owner and that the owner is not, to the repairer's knowledge, merely obtaining modifications or repairs for purposes of resale. Neither of these circumstances are presented in this case.

The cases relied on by KSEA all involve the *sale* of repaired or modified items to a third party. In these cases, the courts have found coverage under the Lanham Act and have issued injunctive relief. For instance, in *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125 (1947), the Court required that permanent marks disclosing the fact and source of reconditioning be added to reconditioned Champion brand spark plugs which were intended for resale to the public.

In a more recent series of watch repair and modification cases, the courts have either required removal of the original trademark or addition of other identifying marks. Each of these cases involved a sale directly to the public or to dealers who obtained the modifications for the purpose of reselling the watches to the public. *See Rolex Watch U.S.A., Inc. v. Michel Co.*, 179 F.3d 704 (9th Cir. 1999) (prohibiting sale of watches bearing Rolex trademark by business which reconditioned or modified the watches using non-Rolex parts then sold the watches to jewelry dealers and retailers); *Rolex Watch U.S.A., Inc. v. Meece*, 158 F.3d 816 (5th Cir. 1998) (similar injunction as to modified new and used Rolex watches); *Bulova Watch Co., Inc. v. Allerton Co., Inc.*, 328 F.2d 20 (7th Cir. 1964) (company that placed Bulova watch movements into non-Bulova diamond-decorated cases and resold the watches through catalog houses was enjoined under the Lanham Act from retaining the Bulova trademark on the watches). While it is merely dictum, the court in *Michel* noted that Rolex had not sought and the court had not "enjoin[ed] [defendant] from altering

Rolex watches at the specific request of an individual watch owner." 179 F.2d at 710 n.8.[1]

The watch repair line of cases discussed above can be distinguished from those situations in which the ultimate owner requests modification and intends to retain ownership. In this latter category, the courts have declined to find a Lanham Act violation. *See U.S. Surgical Corp. v. Orris, Inc.*, 5 F. Supp. 2d 1201 (D. Kan. 1998) (repair consisting of sharpening and sterilizing surgical instruments intended by their manufacturer for single use only did not fall within the coverage of the Lanham Act where the reconditioning was requested by the hospital-owner purchaser), *affirmed*, 185 F.3d 885 (Fed. Cir. 1999); *Excalibur Auto. Co. v. Elite Autoworks*, 733 F. Supp. 65 (E.D. Wis. 1990) (defendant which modified luxury automobiles into stretch limousines did not violate the Lanham Act because it "does not sell Excalibur automobiles; rather, it offers a service to owners of Excalibur automobiles who wish to stretch their sedans into limousines"). *See also Nellcor Puritan Bennett, Inc. v. Medical Taping Systems*, 1996 WL 865817 (N.D. Cal. 1996) (declining to issue preliminary injunction barring modification of trademarked medical device where modifications were requested by the devices' hospital-owner). While the above cases involving owner-requested repairs may not all have focused on the use-in-commerce requirement, they, nonetheless, demonstrate the reluctance of the courts to extend the Lanham Act's scope to owner-requested repairs.[2]

---

[1] The footnote quoted in the text uses the carefully limited phrase "at the specific request of an individual watch owner." Such wording leaves open the possibility that the courts might preclude retention of the trademark if the modifications were requested by jewelry store "owners" of watches obtaining the repairs solely for purposes of further sales. This distinction is further suggested by the initial statement in *Michel* that some of the repairs were requested by dealers on behalf of individual customers. Whatever the limit of this distinction, however, this court need not resolve it. The owner here is not a dealer which resells surgical equipment, but a hospital which maintains the equipment for use in its facilities.

[2] In *U.S. Surgical Corp. v. Orris*, the court expressly addressed the use-in-commerce requirement and found that because Orris neither resold nor advertised using U.S. Surgical's name, the Act was not properly invoked.

This court declines to extend the reach of the Lanham Act to repairs or modifications made at the request of the owner, at least absent indications that the owner intends to sell the products to third parties. This ruling relates solely to the activities of the repairer. The question of whether the owner's use of the product in providing services to third parties, in this case patients and surgeons, is not before this court.

*AFFIRMED*

---

In *Excalibur*, the court blurred the distinction between use-in-commerce and risk-of-confusion but repeatedly noted that the defendant "does not buy or sell automobiles, but rather performs customization services *for the owners*." (Emphasis added). In *Nellcor*, as well, the court discussed the fact that the reconditioning was requested by a sophisticated hospital user-owner, in the context of discussing risk of confusion.