The CANNON GROUP, INC., Plaintiff,

v.

BETTER BAGS, INC., Defendant.

No. C2–00–974.

United States District Court,
S.D. Ohio,
Eastern Division.

March 11, 2003.

894

Roger Allen Gilcrest, Fred Michael Speed, Jr., Standley & Gilcrest, Dublin, OH, for Plaintiff.

Charles Rockwell, Sarah, Morrison, Daggett, Chester Willcox & Saxbe, Columbus, OH, Clarence E. Eriksen, Jackson, Walker LLP, Houston, TX, for Defendant.

### ORDER AND OPINION

MARBLEY, District Judge.

#### I. Introduction

This matter is before the Court on Defendant Better Bags, Inc.'s Motion for Partial Summary Judgment, Plaintiff The Cannon Group, Inc.'s Motion for Partial Summary Judgment, and Plaintiff The Cannon Group, Inc.'s Motion for Partial Summary Judgment on Patent Claims. For the following reasons, Defendant Better Bags, Inc.'s Motion for Partial Summary Judgment (on copyright claims) is **GRANTED,** Plaintiff The Cannon Group, Inc.'s Motion for Partial Summary Judgment (on state-law claims) is **GRANTED,** and Plaintiff The Cannon Group, Inc.'s Motion for Partial Summary Judgment on Patent Claims is **GRANTED.**

#### II. Procedural History

Plaintiff, The Cannon Group, Inc. ("Cannon"), filed this action on August 24, 2000 seeking declaratory judgment on its claims that it does not infringe Defendant Better Bags, Inc's ("BBI") United States Patent 5,732,833 and that the '833 patent is invalid. In its Complaint, Cannon also made claims against BBI for false description, unfair competition, and tortious business interference. In response to Cannon's Complaint, BBI filed a response including counterclaims for patent and copyright infringement, and state-law claims for conversion, tortious interference with contract and business relations, and unfair competition. BBI also sought a preliminary injunction to enjoin Cannon from using BBI's copyrighted grocery bag designs. The Court granted a preliminary injunction enjoining Cannon from using BBI's copyrighted designs on August 9, 2001, and issued a written Order and Opinion on September 18, 2001.

Three motions for partial summary judgment are now before the Court. BBI filed a Motion for Partial Summary Judgment on March 18, 2002 seeking summary judgment on its counterclaim that Cannon infringed its copyrighted bag designs. On April 8, 2002, Cannon filed a Motion for Partial Summary Judgment seeking summary judgment on BBI's counterclaims for conversion, tortious interference with contract and business relations, and unfair competition. Finally, Cannon filed a Motion for Partial Summary Judgment on Patent Claims on April 12, 2002, seeking summary judgment on its claim for declaratory judgment that it has not infringed BBI's '833 patent and on BBI's counterclaim that Cannon has infringed the '833 patent.

#### III. Factual Background

BBI and Cannon manufacture and sell plastic bags to the supermarket industry. The plastic bags at issue in this case are called "header bags." BBI and Cannon sell plastic header bags for use in produce, meat, seafood, and bakery departments of supermarkets. The bags are called header bags because they are grouped together in packs of bags that are attached to a common plastic header. The header is hung from hooks, and shoppers can tear one bag at a time from the hooks for packaging grocery items. Header bags are consid-

ered superior to other kinds of grocery bags that come in large rolls.

During the 1990s, BBI began to sell header bags to supermarkets and provide the dispensing assemblies necessary for the bags. BBI created its own rack systems for use with its header bags. One of its rack assemblies is a floor standing unit that is disclosed in United States Patent Number 5,732,833. In addition to this patented dispensing assembly, BBI also used case-mounted and "Euro rack" assemblies.

To promote sales of its header bags, BBI provided its dispensing assemblies to grocery stores free of charge. Each store that purchased BBI's bags entered an agreement with BBI titled "Rack Agreement Program." According to the agreement, BBI would provide each store with all the dispensing assemblies the store reasonably required. BBI, however, would retain all "right, title, and interest in the racks." BBI further retained the right to take possession of the dispensing assemblies if the store ever stopped purchasing header bags from BBI. Alternatively, if the store ever stopped purchasing BBI header bags, the agreement permitted the store to purchase the dispensing assemblies at a prorated cost.

BBI's patent number 5,732,833 issued March 31, 1998. Generally, the patent claims a "floor standing dispensing assembly for supporting a plurality of packs of plastic bags." The patent does not claim header bags themselves, but claim 3 claims the combination of a dispensing assembly and certain header bags. In 2001, Cannon requested an *ex parte* reexamination of the '833 patent before the United States Patent and Trademark Office ("USPTO"). The USPTO granted the request, and ultimately issued an office action confirming the patentability of claims 1–4, 8 and 9,

and rejecting claims 5–7 and 10–13. In response, BBI filed a statutory disclaimer of the rejected claims.

Only claim 3 of the '833 patent is relevant in this case. Claim 3 first describes a "dispensing assembly for dispensing plastic bags of the type stacked onto one another." Claim 3, which is a Jepson claim,[1] then claims an improvement comprised of the following:

> a header connected to the disposable upper portion of the stack of plastic bags, said header is made from a substantially rectangular piece of plastic having a handle formed from a generally central area of said substantially rectangular piece with said substantially rectangular piece folded longitudinally, said header having a continuous front flange and a continuous back flange along the length of said header, said header including a pair of upper tabs, each said upper tab having a hole therethrough for hanging the stack of plastic bags.

None of the claims in the '833 patent, however, claims the header bags themselves. Rather, the '833 patent only claims certain header bags used in conjunction with certain floor standing dispensers.

BBI distributed its header bags through Bunzl Distribution ("Bunzl"), a worldwide distributor of products to grocery stores. BBI was Bunzl's preferred provider for header bags and dispensers in certain regions, which meant that BBI would develop accounts for its bags and ultimately transfer those accounts to Bunzl. In exchange for its preferred status, BBI gave Bunzl certain rebates on its products.

In early 2000, Bunzl switched to Cannon header bags. Bunzl provided Cannon with

---

1. A Jepson claim is a patent claim that consists of a preamble describing certain prior art, a transitional phrase such as "wherein the improvement comprises," and a body describing the new matter that is claimed.

information about BBI's prices, and Cannon ultimately offered Bunzl a better price. Bunzl orchestrated a change from BBI bags to Cannon bags. Cannon also provided its own racks for its header bags, but during the transition period, Cannon bags were sometimes used on BBI racks, which BBI had provided to grocery stores free of charge. In one known case, in Vergennes, Vermont, Cannon bags were found hanging on a BBI dispensing assembly at a Super Value store.

BBI's bags feature certain copyrighted designs. In particular, BBI sells bags with a meat design, corn design, fish design, and bakery design. BBI acquired rights in these designs through assignments from the authors of the designs, and BBI holds registration certificates from the United States Copyright Office for each of the four copyrighted designs.[2] In 2000, Bunzl sent Cannon samples of BBI's meat, corn, fish, and bakery header bags. Cannon copied these designs almost exactly for its own header bags without seeking permission from BBI. Cannon sold Bunzl 438 cases of meat header bags, 713 cases of corn header bags, 4,720 cases of fish header bags, and 241 cases of bakery header bags, all bearing BBI's copyrighted designs. Cannon stopped manufacturing the header bags with BBI's copyrighted designs, but still had inventory of 182 cases of meat header bags, 205 cases of corn header bags, 165 cases of fish header bags, and 83 cases of bakery header bags.

## IV. Standard of Review

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.

R.Civ.P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1388–89 (6th Cir.1993). In response, the nonmoving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.,* 8 F.3d 335, 339–40 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

## V. Analysis

### A. BBI's Motion for Partial Summary Judgment on Copyright Claims

BBI seeks summary judgment on its copyright infringement counterclaim. In August 2001, the Court granted a preliminary injunction enjoining Cannon from using BBI copyrighted bag designs. BBI has registered copyrights on special header bag designs for corn, meat, fish, and bakery bags.

To establish a *prima facie* case of copyright infringement, BBI must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns,*

---

**2.** The Court outlined in greater detail the facts concerning BBI's copyrights in its September 19, 2001 Order and Opinion Granting

Defendant's Application for a Preliminary Injunction.

*Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *see also Hi–Tech Video Prods., Inc. v. Capital Cities/ABC, Inc.,* 58 F.3d 1093, 1095 (6th Cir.1995). In its September 2001 Order & Opinion preliminarily enjoining Cannon from using BBI copyrighted bag designs, this Court found that BBI had established a prima facie case of copyright infringement. Cannon now does not contest the fact that it copied elements of BBI's bags without authority. Instead, Cannon now makes several arguments challenging the validity of BBI's copyrights for each of the bag designs.

### 1. Meat and Bakery Bag Designs

■ Cannon argues that BBI's copyright registrations for its meat and bakery bag designs are invalid because BBI failed to disclose to the copyright office certain designs it had used previously for meat and bakery bags. Specifically, BBI had previously used certain decorations from its bakery bag design and the text "Fresh Meats" and "Another Service for Your Convenience" from its meat bag design. BBI argues that it did not intentionally omit reference to these previous designs and even if it did the Copyright Office would have nevertheless registered BBI's copyrights on its meat and bakery bag designs.

Copyright registration is a requirement for a copyright holder to maintain an action for copyright infringement. 17 U.S.C.A. § 411(a) (West Supp.2002). A certificate of registration constitutes *prima facie* evidence of copyright validity. 17 U.S.C.A. § 410(c) (West 1996). The Court is only required to accord a presumption of validity to "certificates of registration made before or within five years after first publication of the work." *Id.* The copyright registrations for the meat and bakery bag designs were made less than a year after the first publication of

these designs and are therefore *prima facie* evidence of validity.

■ Nevertheless, "[t]he knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute reason for holding the registration invalid and thus incapable of supporting an infringement action." *Russ Berrie & Co. v. Jerry Elsner Co.,* 482 F.Supp. 980, 988 (S.D.N.Y.1980); *see also Eckes v. Card Prices Update,* 736 F.2d 859, 861–62 (2d Cir.1984) (quoting *Russ Berrie*). Such an omission, however, must have been made knowingly or intentionally. *Advisers, Inc. v. Wiesen–Hart, Inc.,* 238 F.2d 706, 708 (6th Cir.1956) ("[A]n innocent misstatement, or a clerical error, in the affidavit and certificate of registration, unaccompanied by fraud or intent to extend the statutory period of copyright protection, does not invalidate the copyright, nor is it thereby rendered incapable of supporting an infringement action.").

The critical flaw, however, with Cannon's argument is that Cannon does not allege any reason why the Copyright Office would have rejected BBI's copyright registrations for the meat and bakery bag designs had it known of BBI's earlier use of certain components of those designs. Failure to disclose information deprives the copyright office of the ability to make a fully informed decision about whether the new work of authorship is sufficiently original to deserve copyright protection. *Santrayall v. Burrell,* 993 F.Supp. 173, 176 (S.D.N.Y.1998). But originality requires only a "minimal degree of creativity." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). Originality may be found in a compilation or derivative work that is based on earlier works that may be copyrighted themselves. 17 U.S.C.A. § 103 (West 1996). But the copyright in a compilation or derivative work "is indepen-

dent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material." *Id.* § 103(b).

Although determining whether BBI intentionally failed to disclose information to the copyright office is an issue not easily decided on a motion for summary judgment, the Court need not consider BBI's intent because the information it failed to disclose would not have precluded copyright registration. Indeed, "[i]n general, failure to disclose that the registered work is derivative of an earlier, underlying work should occasion rejection of the registration certificate only if the claimant was for some reason ineligible to register the derivative work." Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 7.20(B) (2002). In this case, Cannon has adduced no evidence showing that BBI is ineligible to register the derivative work.

BBI sought copyright registration for the overall design of its bakery and meat designs. The designs incorporated preexisting text and artwork, but because the copyright in a derivative work is independent from the copyright for preexisting work, the copyright office would have nevertheless granted BBI's registration, assuming the bag designs possessed the necessary originality compared with the preexisting works. Cannon makes no argument that the bag designs lacked such minimal originality. In fact, the layout and added elements of each design create sufficient originality for copyright protection, given the minimal degree of originality required. Cannon's argument that BBI's failure to disclose all derivative works serves fraudulently to lengthen BBI's copyright term is without merit. The copyright term in the derivative work is independent of any preexisting material; therefore, the derivative work is entitled to its full term based on the dates disclosed in BBI's certificate of registration.

Furthermore, Cannon's fraud on the copyright office argument fails because the undisclosed preexisting work belonged to BBI, not to a third party. In some cases courts have found that registrations are invalid because the copyright claimant failed to disclose preexisting work created by others. *See, e.g., R. Ready Prods., Inc. v. Cantrell,* 85 F.Supp.2d 672, 692 (S.D.Tex.2000) (finding that a plaintiff committed fraud on the Copyright Office where the plaintiff failed to disclose preexisting work created by others); *Garner v. Sawgrass Mills Ltd. P'ship,* 35 U.S.P.Q.2d 1396, 1402–04, 1994 WL 829978 (D.Minn. 1994) (barring the plaintiff's copyright infringement action where he failed to disclose to the Copyright Office that his copyrighted logo was based on the defendant's logo). Another court, however, rejected the defendants' fraud on the Copyright Office argument because although the plaintiffs failed to disclose that they had incorporated portions of the defendants' music into their song, the plaintiffs' copyrighted song possessed more than enough originality for copyright protection. *Santrayall v. Burrell,* 993 F.Supp. 173, 176 (S.D.N.Y.1998). Finally, another court summarily dismissed the defendant's fraud on the Copyright Office argument where the plaintiff failed to disclose that certain aspects of its architectural designs were based on previous work by the plaintiff. *Balsamo/Olson Group, Inc. v. Bradley Place Ltd. P'ship,* 966 F.Supp. 757, 761 (C.D.Ill.1996). Although the Court would consider rejecting a copyright registration if BBI had withheld information about preexisting work belonging to others, in this case, BBI owned the preexisting work that it failed to disclose to the Copyright Office.

Therefore, the Court finds that BBI's certificates of registration for its meat and bakery bag designs are valid and therefore

capable of supporting an infringement action.

### 2. Fish Bag Design

 Cannon argues that BBI may not have a valid copyright registration for its fish bag design because Mr. Jeffrey Otruba assigned BBI the rights to this copyright but Mr. Otruba was in fact an employee of American Tissue Corporation ("American Tissue") at the time he designed the fish bag. Cannon therefore argues that American Tissue holds the copyright to the fish bag design because Mr. Otruba created the bag as a work for hire for his employer, American Tissue. BBI argues that Mr. Otruba worked directly for BBI when he designed the fish bag, and therefore, Mr. Otruba's assignment of rights to BBI is valid.

Copyright in a work of authorship "vests initially in the author or authors of the work." 17 U.S.C.A. § 201(a) (West 1996). But, "[i]n the case of a work made for hire, the employer . . . is considered the author . . . unless the parties have expressly agreed otherwise in a written instrument signed by them." *Id.* § 201(b). Cannon may argue that BBI does not properly own the copyright for the fish bag, but it must prove that Mr. Otruba's work was a work made for hire. During oral argument, counsel for Cannon argued that BBI has the burden of presenting a written document to prove that the fish bag was not a work made for hire. Although it is true that the employer is considered the author of a work made for hire absent a written agreement to the contrary, this rule only applies if the work is in fact a work made for hire. *Avtec Sys. Inc. v. Peiffer*, 38 U.S.P.Q.2d 1922, 1925, 1995 WL 541610 (4th Cir.1995) ("Copyright ownership of a

work is presumed to vest in its author . . . unless that person's employer can establish, the burden being on the employer, that it is a 'work made for hire.' "). Therefore, only if the work-for-hire exception applies would BBI need to present a written agreement between American Tissue and Mr. Otruba reserving rights to Mr. Otruba.[3]

A work is made for hire if it is "prepared by an employee within the scope of his or her employment." 17 U.S.C.A. § 101 (West Supp.2002). The parties agree that Mr. Otruba was an employee of American Tissue when he created the fish bag design. The relevant question, therefore, is whether Mr. Otruba was working within the scope of his employment relationship with American Tissue when he designed the BBI fish bag. To determine whether Mr. Otruba was working within the scope of his employment, the Court must apply general common-law agency principles. *See Cmty. for Creative Non–Violence v. Reid*, 490 U.S. 730, 751, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989). The work was performed within the scope of his employment if the following can be shown:

> (1) the work was of the type for which [Mr. Otruba] was hired to perform; (2) [Mr. Otruba's] creation of the [bag design] occurred 'substantially within the authorized time and space limits' of his job; and (3) [the work] was 'actuated at least in part, by a purpose to serve' [American Tissue's] interests.

*Avtec Sys.*, 38 U.S.P.Q.2d at 1925 (quoting Restatement (Second) of Agency § 228 (1958)).

---

**3.** For example, if Mr. Otruba had created the fish bag design while acting within the scope of his employment, he could have nevertheless retained the copyright to the design, but only pursuant to a written agreement with American Tissue granting him the rights to the design. In this case, however, Mr. Otruba did not create the fish bag design while acting within the scope of his employment, as explained *infra*.

Although designing the fish bag for BBI was the type of work that Mr. Otruba was hired to perform for American Tissue, the creation of the design was not within the authorized time and space limits of his job and was not actuated by a purpose to serve American Tissue's interests. Rather, Mr. Otruba worked directly for BBI on his own time. In fact, American Tissue has never done work for BBI. (Otruba Dep. at 6.) Mr. Otruba worked directly for a BBI representative, not through American Tissue or his previous employer. (Otruba Dep. at 15.) BBI paid Mr. Otruba directly, not through American Tissue. (Otruba Dep. at 18.) Furthermore, Mr. Otruba created the fish bag design on his own time at his home using his own supplies. (Otruba Dep. at 33.)

Therefore, BBI's copyright on its fish bag design is valid and does not properly belong to American Tissue.

### 3. Corn Bag Design

██ Cannon argues that there is a genuine issue of material fact concerning whether BBI's corn bag design is too realistic to constitute an original expression subject to copyright protection. BBI counters that the artistic expression of corn found on its header bags is entitled to copyright protection.

Indeed, the "*sine qua non* of copyright is originality." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Id.* The drawing of ears of corn on BBI's header bags possess at least the requisite amount of creativity for copy-

right protection. Further, in addition to a drawing of ears of corn, BBI's corn bag design also includes the text "Fresh Corn" in fancy lettering. Even if the drawing of ears of corn itself were not eligible for copyright protection, the placement of the drawing in conjunction with the text would be eligible for copyright protection.

Finally, Cannon erroneously relies on *Vickery Design, Inc. v. Aspen Bay Co.*, 185 F.3d 876, No. 98–2217, 1999 WL 546780 (10th Cir.June 1, 1999) (unpublished opinion), for the proposition that a rendering of corn is not subject to copyright protection. In *Vickery*, the court considered a miniature corn candle called the Corndle and decided that "copyright law does not allow a monopoly on the idea of an object occurring in nature." *Id.* at *1. Cannon's argument fails to recognize a fundamental premise of copyright law, however, that "[w]hile the idea cannot be monopolized, the artistic expression of that idea is protected by copyright laws." *Id.* In this case, BBI seeks copyright protection in its artistic expression of ears of corn. This expression is different than real ears of corn themselves. Therefore, BBI's copyright on its corn bag design is valid.[4]

Accordingly, this Court **GRANTS** BBI's motion for summary judgment on its copyright infringement counterclaim because BBI's copyrights for its header bags are valid and Cannon asserts no additional defenses to copyright infringement.

### B. Cannon's Motion for Partial Summary Judgment on State Law Counterclaims

Cannon moves for summary judgment on BBI's state law counterclaims of conversion, tortious interference with contract and business relations, and unfair competi-

---

4. Following Cannon's logic on this issue, photographs would never be eligible for copyright protection because they are too realistic.

tion. Cannon also seeks summary judgment on the issue of punitive damages for each of these claims.

### 1. Conversion

■ Cannon argues that BBI's counterclaim against it for conversion of BBI's header bag dispensers must fail because Cannon did not exercise dominion and control over BBI's dispensers. BBI counters that although Cannon never physically deprived BBI of possession of BBI's header bag dispensers, Cannon exercised dominion over the racks in exclusion of the rights of BBI to use the racks for its header bags.

■ The tort of conversion in Ohio "might arise from the exercise of a dominion over [another's property] in exclusion of the rights of the owner, or withholding [another's property] from his possession under a claim inconsistent with his rights." *Balt. & Ohio R.R. v. O'Donnell*, 49 Ohio St. 489, 32 N.E. 476, 478 (1892). "The elements of a conversion claim are: 1) plaintiff's ownership or right to possession of the property at the time of the conversion; 2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and 3) damages." *NPF IV, Inc. v. Transitional Health Servs.*, 922 F.Supp. 77, 81 (S.D.Ohio 1996). Although the owner of property usually need not demand return of the property for a conversion claim to arise, *see O'Donnell*, 32 N.E. at 478, there can be no claim for conversion where one lawfully acquires

possession of the property of another unless the owner demands return of the property and the defendant refuses to return the property, *see Fidelity & Deposit Co. of Md. v. Farmers & Citizens Bank of Lancaster*, 72 Ohio App. 432, 52 N.E.2d 549, 550–51 (1943); *see also NPF IV*, 922 F.Supp. at 81.

■ In this case, the grocery stores that used BBI's header bag dispensers had lawful possession of the bag dispensers. Pursuant to the agreements between BBI and each grocery store, BBI retained ownership of the bag dispensers. But BBI granted the stores permission to use the bags so long as the stores continued to order BBI bags. In the event the stores stopped buying BBI bags, BBI had a right to take possession of the dispensers it had provided.[5]

Therefore, because the stores lawfully had possession of BBI's bag dispensers, for a claim of conversion to succeed, BBI must have demanded return of the property and been denied. In fact, there is no evidence that Cannon ever denied BBI possession of its bag dispensers. The evidence shows only that some grocery stores used BBI dispensers for Cannon bags. But the stores had legal possession of the BBI dispensers at that time. Although BBI was entitled to repossess its dispensers once a store stopped purchasing BBI bags, absent an ignored demand from BBI, there can be no claim for conversion. In fact, during oral argument, counsel for

---

5. The agreement between BBI and grocery stores provides, in relevant part:

> As part of Better Bags, Inc.'s total packaging system, we are making available to your company, at no additional cost, all of the necessary E–Z Open Header Bag Racks that your company may reasonably require.
> ... The E–Z Open Header Bag Racks shall at all times continue to be the property of Better Bags, Inc. ("BBI") and all right, title, and interest in the racks shall remain exclusively with BBI.

> BBI reserves the right to take possession of the racks if at any time your company either notifies BBI that it will no longer purchase our E–Z Open Header Bag System or otherwise fails to continue to purchase our E–Z Open Header Bag System. At that time, all racks will be returned to BBI in their original condition, less ordinary wear and tear, or will be purchased by your company at a prorated cost.

BBI admitted that BBI assented to some grocery store requests to continue using BBI racks until the stores could acquire new racks for use with new bags. According to counsel, BBI permitted such use to avoid repossessing racks from stores and leaving them with no racks, which would have permanently damaged BBI's business relationship with stores. Therefore, the stores were lawfully using BBI's racks.

BBI argues that its agreement with grocery stores provided that they were only permitted to use BBI bags on BBI dispensers. In fact, the agreements with grocery stores did not contain such a provision. Indeed, if a grocery store stopped purchasing BBI bags, BBI was entitled under the agreement to repossess the bag dispensers it had given the grocery store. But the agreement does not limit use of the bag dispensers. If BBI chose not to repossess its racks, its only other remedy under the contract was to force grocery stores to buy the racks. BBI never took any such action. This Court therefore **GRANTS** Cannon summary judgment on BBI's claim for conversion.

## 2. Tortious Interference with Contract and Business Relations

BBI claims that Cannon tortiously interfered with its contracts and business relations with grocery stores and Bunzl.

The elements of the tort of tortious interference with contract and tortious interference with a business relationship are essentially the same. The elements of these two torts are as follows: "(1) a business relationship or contract; (2) the wrongdoer's knowledge of the relationship or contract; (3) the wrongdoer's intentional and improper action taken to prevent a contract formation, procure a contractual breach, or terminate a business relationship; (4) a lack of privilege; and (5) resulting damages." *Brookeside Ambulance, Inc. v. Walker Ambulance Serv.*, 112 Ohio App.3d 150, 678 N.E.2d 248, 252 (1996);

*see also Fred Siegel Co. v. Arter & Hadden,* 85 Ohio St.3d 171, 707 N.E.2d 853, 858 (1999) (stating elements of tortious interference with contract).

Cannon does not dispute that BBI had business relationships and contracts with Bunzl and several grocery stores, that Cannon had knowledge of these contracts and business relationships, and that BBI suffered a loss when Cannon won the accounts of Bunzl and grocery stores. Therefore, the only elements at issue on this motion for summary judgment are whether Cannon took improper action to procure a breach of contract or terminate a business relationship and whether Cannon lacked a privilege to engage in any competitive activity it employed.

First, there is no evidence that anyone breached a contract with BBI. BBI's contracts with Bunzl and grocery stores were at-will contracts, and Bunzl and the stores were free to purchase header bags from other vendors. Second, "fair competition" is privileged and cannot form the basis of a claim for tortious interference with a contract where the contract is an at-will contract. *Fred Siegel,* 707 N.E.2d at 860. To determine whether competition is fair competition, and therefore privileged, Ohio has adopted section 768 of the Restatement (Second) of Torts. *Id.* at 861. The Restatement provides as follows:

One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if

(a) the relation concerns a matter involved in the competition between the actor and the other and

(b) the actor does not employ wrongful means and

(c) his action does not create or continue an unlawful restraint of trade and

(d) his purpose is at least in part to advance his interest in competing with the other.

Restatement (Second) of Torts § 768(1) (1979). BBI contends that Cannon's acts were tortious because Cannon employed wrongful means by inducing Bunzl and grocery stores to purchase Cannon bags at a low price and use BBI racks to hang the bags. The evidence before the Court, however, is clear that Cannon did not employ any wrongful means when it negotiated with Bunzl and grocery stores for their business. In a December 16, 1999 e-mail from Frank Cannon, Jr. of Cannon to Mark Brasher of Bunzl, Mr. Cannon gave Bunzl a quote for Cannon bags. Mr. Cannon emphasized that his quote was a "NET NET NET number (No Corp Rebate, No Region Rebate, No Rack Program)." In the same e-mail, Mr. Cannon also offered to sell floor racks for $38.00 each. But there was no suggestion in this e-mail that Bunzl and grocery stores should attempt to save money by buying Cannon bags and unlawfully using BBI's racks. Rather, Mr. Cannon noted in the e-mail that Bunzl may need to purchase racks, and that Cannon's prices do not include the cost of the racks. This offer simply constituted a better deal for Bunzl who ultimately chose to purchase Cannon bags instead of BBI bags.

Furthermore, there is no additional evidence to suggest that Cannon engaged in tortious interference with either contract or prospective business relations between BBI and its customers. Therefore, the Court **GRANTS** Cannon summary judgment on BBI's claims for tortious interference with contract and prospective business relations.

### 3. Unfair Competition

█ BBI claims that Cannon engaged in unfair competition when it competed for BBI's header bags business with Bunzl. Cannon seeks summary judgment on this claim arguing that it did not engage in any unfair practices; rather, it competed fairly and ultimately won Bunzl's business because it offered a lower price on header bags than BBI offered.

The tort of unfair competition is grounded on "preventing fraud upon the public" by preventing deceptive trade practices. *Drake Medicine Co. v. Glessner,* 68 Ohio St. 337, 67 N.E. 722, 727 (1903). Unfair competition may include "unfair commercial practices such as malicious litigation, circulation of false rumors, or publication of statements, all designed to harm the business of another." *Water Mgmt., Inc. v. Stayanchi,* 15 Ohio St.3d 83, 472 N.E.2d 715, 717 (1984).

In this case BBI does not allege that Cannon sold its bags under BBI's name. Rather, BBI cites six other ways in which it alleges that Cannon engaged in unfair competition. None of these practices, however, constitute unfair competition.

First, BBI complains that Cannon targeted its business with Bunzl and obtained confidential price information from Bunzl. Second, BBI argues that Cannon used this information to steal BBI's bag business with Bunzl. The evidence cited for these propositions is the deposition testimony of Mark Brasher, a Bunzl officer, and an e-mail Mr. Brasher wrote around the time that Bunzl switched to buying Cannon bags instead of BBI bags. The testimony and e-mail of Mr. Brasher, however, do not demonstrate that Cannon engaged in any unfair practices. The e-mail is one Mr. Brasher sent to Bunzl regional managers regarding their potential switch to Cannon bags. Mr. Brasher instructs his managers to give Cannon[6] the prices Bunzl was pay-

---

**6.** Mr. Brasher actually refers to "Saneck," which is one of Cannon's operating divisions.

ing for BBI bags so that Cannon could make a competing offer. Mr. Brasher emphasizes in the e-mail that Bunzl cannot use Cannon bags on BBI's racks. Rather, Bunzl managers must purchase new racks from Cannon. There is no evidence that Cannon did anything unfair to induce Mr. Brasher to tell it the prices Bunzl paid for BBI bags. There is no evidence, nor is there any allegation, that BBI's pricing information was a trade secret. The only evidence is that Bunzl voluntarily provided Cannon with the prices it paid for BBI's bags in order to get a competitive bid for header bags. By accepting this information and making a competing bid, Cannon did not engage in unfair competition.

 Third, BBI alleges that Cannon engaged in unfair competition by copying its copyrighted bag designs. To the extent that a claim for unfair competition rests solely on the copying of a copyrighted work, federal copyright law preempts that state-law cause of action. *See, e.g., Ehat v. Tanner*, 780 F.2d 876, 878 (10th Cir.1985).

 Fourth, BBI alleges that Cannon hung its own header bags on BBI's racks, and fifth, BBI alleges that Cannon established a written procedure for removing bag shields from BBI's racks and using them on Cannon's racks. The evidence before the Court, however, shows that although store employees and Bunzl staff may have hung some Cannon bags from BBI racks, Cannon employees did not engage in this practice. Further, Bunzl replaced BBI racks with Cannon racks, although in some cases BBI racks were used for Cannon bags. But this conduct did not constitute conversion because the stores lawfully had possession of the bag racks and bag shields. Although BBI was entitled to repossess its racks if the stores stopped purchasing BBI bags, there is no evidence that anyone at Cannon ever did anything to prevent BBI from taking possession of its racks after the stores stopped purchasing BBI bags. In any event, none of these actions constitutes unfair competition, such as malicious litigation or publication of false rumors about a competitor.

Finally, BBI argues that Cannon engaged in unfair competition by showing certain photographs concerning this litigation to a manager for Victory Market stores. BBI took photographs in a Victory Market store of Cannon bags on BBI racks. BBI produced these photographs to Cannon, and Cannon conducted its own investigation, showing them to Judy Markey, the director of packaging and supply acquisition for Victory Market. Ms. Markey was upset that BBI would take photographs in her store without her permission. BBI alleges that this caused Victory Market to discontinue purchasing BBI bags. Merely showing these pictures to Ms. Markey did not constitute unfair competition. There was nothing secret about the pictures BBI produced. Moreover, Cannon could not have known that Ms. Markey would be upset about the photographs. Finally, because the photographs showed that Victory Market was already using Cannon bags, there is no evidence that Cannon convinced Victory Market to switch to Cannon bags by showing Ms. Markey the pictures. Rather, Victory Market had already switched to Cannon bags.

Therefore, the Court **GRANTS** Cannon summary judgment on BBI's unfair competition counterclaim.

#### 4. Punitive Damages

Because the Court grants Cannon summary judgment on all of BBI's state-law counterclaims, the Court need not address Cannon's argument that it at least deserves summary judgment on BBI's claim for punitive damages on these state-law claims.

### C. Cannon's Motion for Partial Summary Judgment on Patent Claim and Counterclaim

Cannon moves for summary judgment on its claim that it did not infringe BBI's '833 patent and on BBI's counterclaim that Cannon did infringe the '833 patent.

BBI does not claim that Cannon directly infringed the '833 patent. Rather, BBI claims that Cannon actively induced infringement and contributorily infringed the '833 patent. Cannon responds that both inducement to infringe and contributory infringement require that someone directly infringe the patent. Cannon argues that no one infringed the '833 patent in this case because the doctrine of repair and replacement permitted Bunzl and grocery stores to use Cannon's bags on BBI's racks.[7]

BBI's claims for inducement to infringe and contributory infringement are based on claim 3 of the '833 patent. Claim 3 covers the combination of a certain floor standing dispensing assembly and certain header bags. The '833 patent does not claim the header bags themselves. Rather, claim 3 only claims the combination of the dispensing assembly and bags. BBI presents evidence that a Super Value store in Vergennes, Vermont used the combination of BBI's dispensing assembly and Cannon's header bags. BBI argues that because this combination of dispensing assembly and bags is claimed by the '833 patent, Cannon engaged in inducement to infringe and contributory infringement when it sold header bags to Bunzl and grocery stores knowing and intending that the bags would be used on BBI's dispensing assemblies.

■■■■■ In addition to prohibiting direct infringement of a patent, the Patent Act prohibits both active inducement to infringe and contributory infringement. The Act provides as follows:

(b) Whoever actively induces infringement of a patent shall be liable as an infringer.

(c) Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C.A. § 271(b)-(c) (West 2001). Both contributory infringement and inducement to infringe a patent require that someone directly infringe the patent. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961) ("[I]f there is no direct infringement of a patent there can be no contributory infringement."); *Brantingson Fishing Equip. Co. v. Shimano Am. Corp.*, 8 U.S.P.Q.2d 1669, 1675, 1988 WL 282154 (Fed.Cir.1988) ("[I]f there is no evidence of direct infringement, there can be no inducement of or contributory infringe-

---

7. Cannon also argues that the first sale doctrine permitted Bunzl and grocery stores to use Cannon's bags. Although the repair and replacement doctrine is really a corollary to the first sale doctrine, the first sale doctrine itself does not apply in this case. According to the first sale doctrine, once the patentee sells a particular patented article, "the article is

beyond the reach of the monopoly which that patent confers." *United States v. Univis Lens Co.*, 316 U.S. 241, 252, 62 S.Ct. 1088, 86 L.Ed. 1408 (1942). In other words, the purchaser may resell the article without infringing the patent. In this case, no one resold BBI's racks.

ment."); *see also Kendall Co. v. Progressive Med. Tech., Inc.*, 85 F.3d 1570, 1573 (Fed.Cir.1996); *Sage Prods., Inc. v. Devon Indus., Inc.*, 45 F.3d 1575, 1577 (Fed.Cir. 1995). In this case, BBI alleges that the grocery stores directly infringed the '833 patent and Cannon induced infringement and contributorily infringed by selling Cannon bags to the grocery stores. Therefore, if the grocery stores did not directly infringe the '833 patent when they used Cannon bags on BBI racks, then Cannon did not induce infringement or contributorily infringe.

Use of a patented product "without authority" constitutes direct infringement. 35 U.S.C.A. § 271(a). The seller of a patented product comprised of unpatented components impliedly grants the purchaser of the product authority to use the whole product. *See Aro*, 365 U.S. at 342–43, 81 S.Ct. 599. Therefore, the owner of such a product may repair it or replace spent or worn parts of the combination that are not themselves patented without infringing the patent on the product. *Id.* at 345–46, 81 S.Ct. 599. Although repair and replacement of unpatented parts does not constitute infringement, reconstruction of a patented combination does constitute infringement. *Id.* at 342, 81 S.Ct. 599.

It is clear in this case that hanging new header bags from BBI's racks constitutes permissible replacement of a spent part, rather than impermissible reconstruction. There is no question that the header bags are eventually exhausted, and new bags must replace them. In *Sage Products*, the Federal Circuit upheld a District Court's decision that replacement of the unpatented disposable inner container of a medical sharps disposal system did not constitute infringement of the patent claiming the entire product. *Sage Prods.*, 45 F.3d at 1578–79. Likewise, in *Kendall Co.* the Federal Circuit upheld the lower court's decision that replacement of unpatented pressure sleeves on a patented medical

device did not constitute infringement of the combination patent protecting the entire machine. *Kendall Co.*, 85 F.3d at 1574–75. In both *Sage Products* and *Kendall Co.* the court found that replacement of certain parts was permissible despite the fact that those parts were not completely spent and technically could have been reused. *See Kendall Co.*, 85 F.3d at 1574–75; *Sage Prods.*, 45 F.3d at 1578 ("This court has never said that an element is spent only when it is impossible to reuse it."). In this case, there is no question that stores must frequently replace the header bags on BBI's dispensers because they do in fact become depleted. In fact, during oral argument, counsel for BBI admitted that changing bags on BBI racks constituted repair or replacement, not reconstruction.

BBI argues, however, that the doctrine of repair and replacement does not apply in this case because BBI never sold its bag dispensing assemblies to the grocery stores. The doctrine of repair and replacement, however, is rooted in the notion that the purchaser of a product is granted a license to use the whole product. *Aro*, 365 U.S. at 345–46, 81 S.Ct. 599. In this case, although BBI never sold its dispensing assemblies to the grocery stores that used them, BBI granted the stores a license to use the whole assemblies. It was clearly understood that the stores would use the assemblies for hanging header bags and that the header bags would be routinely replaced. Although the agreement between BBI and individual grocery stores gave BBI the right to repossess racks if stores stopped purchasing BBI bags, the agreement did not otherwise limit use of the racks. Although one can reasonably conclude based on the contract that BBI would choose to repossess any bag racks used for a competitor's bags, the agreement does not expressly prohibit such use. Furthermore, the agreement

provides that the stores could purchase the racks from BBI if they ever started purchasing header bags from another company. Therefore, BBI recognized that its racks might be used with the bags from a competitor. Although BBI certainly had the right to repossess its racks under the agreement it had with grocery stores, the stores were entitled to replace BBI header bags with other bags until the racks were repossessed or the stores purchased the racks from BBI. During oral argument, counsel for BBI admitted that BBI gave some stores express permission to continue using BBI's racks until they could purchase other racks. BBI therefore made a decision not to exercise its repossession rights under the rack agreements.

BBI argues that the Supreme Court's reasoning in *Aro Manufacturing Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964) ("*Aro II*"), is applicable to this case and prevents use of the repair and replacement doctrine to absolve Cannon of liability as a contributory infringer. In *Aro II*, the Court found that because Ford did not have a license to use a certain patented convertible top, the purchasers of Ford cars employing the top were not entitled to repair or replace their tops. *Id.* at 478, 483–84, 84 S.Ct. 1526. But in this case, the grocery stores had permission to use BBI's bag dispensing assemblies. Therefore, they did not infringe BBI's patent when they replaced BBI's bags with Cannon's bags.

For the foregoing reasons, Cannon's Motion for Partial Summary Judgment on Patent Claims is **GRANTED**.

### VI. Conclusion

For the forgoing reasons, Defendant BBI's Motion for Partial Summary Judgment (on copyright claims) is **GRANTED,** Plaintiff Cannon's Motion for Partial Summary Judgment (on state-law claims) is **GRANTED,** and Plaintiff Cannon's Motion for Partial Summary Judgment on Patent Claims is **GRANTED**.

**IT IS SO ORDERED.**